UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| MOHAMMAD ANWAR ) | Case No. 04-15206 |
| ) | Chapter 7 |
| Debtor ) | |

**MEMORANDUM OPINION**

This matter is before the court on the objection of the debtor, Mohammad Anwar, to the $32,400 claim filed by Mohammad H. Abdelghany arising out of an investment in the debtor's restaurant. An evidentiary hearing was held on March 23, 2006, at which both Mr. Anwar and Mr. Abdelghany were present in person and were represented by counsel. For the reasons stated, the court will allow the claim, but in a reduced amount.

Background

The debtor, Mohammad Anwar, filed a voluntary petition in this court on December 27, 2004, for relief under chapter 7 of the Bankruptcy Code and was granted a discharge on April 11, 2005. At the time the petition was filed, he was a defendant in a state court lawsuit that had been brought by Mohammed Abdelghany arising from Mr. Abdelghany's investment in a restaurant known as Islamabad Restaurant in Washington, D.C. Mr. Abdelghany filed a timely proof of claim (Claim No. 3) in this case in the amount of $45,400 for fraud and breach of contract in connection with the investment contract. The claim was subsequently amended (by Claim No. 6) to reduce the amount to $32,400.

1

In March 2005, the chapter 7 trustee brought an adversary proceeding against Mr. Anwar and his wife, Shanaz Aktar, to avoid a November 2002 transfer of Mr. Anwar's townhouse into his wife's name. That adversary proceeding was settled in January 2006, with Mr. Anwar paying the trustee $25,000—an amount apparently sufficient to pay all filed claims other than Mr. Abdelghany's—and undertaking to object to Mr. Abdelghany's claim. Under the terms of the settlement, the $25,000 payment would be a "full and final" settlement of the adversary proceeding if the claim is disallowed; otherwise the defendants would consent to entry of a judgment in favor of the trustee.

Mr. Abdelghany testified that he became acquainted with Mr. Anwar when eating lunch at the Islamabad Restaurant, which is located in Washington, D.C., approximately five minutes from the newspaper where Mr. Abdelghany was employed. According to Mr. Abdelghany, he and his wife had saved about $35,000. He had observed that restaurants were "making money," and he was interested in learning the business. Mr. Abdelghany approached Mr. Anwar in early 2004 and offered to work at the restaurant for free to learn the business, to which Mr. Anwar replied, "I have a better idea," and proposed selling 50% of the business to Mr. Abdelghany. At a meeting at Mr. Anwar's house in Springfield, Virginia, Mr. Anwar said that he had appraised the business as being worth $70,000 to $80,000, but that Mr. Abdelghany could make an initial payment of $28,000 to $29,000 and invest the remainder in direct improvements to the business. According to Mr. Abdelghany, Mr. Anwar represented that the business generated profits of approximately $4,000 per month, which they would split 50-50. Mr. Abdelghany's wife, Sabah Hassa, corroborated that Mr. Anwar had represented that the restaurant was a good business and that it could

make $2,000 a month for them and $2,000 a month for him and that he had a very good relationship with the landlord.   Mr. Anwar was unable to answer Mr. Abdelghany's questions concerning the lease, and Mr. Abdelghany could not himself understand its terms. Mr. Abdelghany therefore had an attorney explain the lease terms to him and learned that the lease ran only to 2005.  Mr. Abdelghany testified that Mr. Anwar assured him, however, that he was on good terms with the landlord and was confident that the landlord would agree to a 10-year extension.

Mr. Anwar's account of the negotiations was considerably different.  He testified that Mr. Abdelghany approached him several times about buying an interest in the restaurant and that he finally offered to sell him a 50% interest for $29,000.  According to Mr. Anwar, he told Mr. Abdelghany "all about" the business and told him that the business was sometimes slow and sometimes up, neither too good nor too bad.  Mr. Anwar further testified that Mr. Abdelghany represented that he had experience in the restaurant business and suggested that Mr. Anwar, who was getting on in years, could "stay home" and let Mr. Abdelghany run the restaurant.

In any event, Mr. Anwar and Mr. Abdelghany entered into a written contract dated April 1, 2004, entitled "Sale Agreement."  Under the agreement, Mr. Abdelghany was to pay $28,000 "for the purchase of 50% (Fifty Percent Shares) in the Corporation (herein referred to as 'ISLAMABAD RESTAURANT INC,)" [*sic*].  Notwithstanding the preface, which appears to structure the purchase as a stock sale, the succeeding paragraphs seem to treat the purchase as an asset sale, since they state that the purchaser is purchasing, and the seller is selling, "the assets of the (the 'Business')" [*sic*] and that the seller "wishes to memorialize its

3

warranty that all of the said assets will convey free of liens." The agreement recites that parties agreed to a total price for the business of $56,000 and that they would "share in the Islamabad Restaurant, Inc. on 50=50% [*sic*] basis and, to run the business of 'Islamabad Restaurant' on equal basis." The agreement additionally states that Mr. Abdelghany would be "nominated" as president of the corporation. In the agreement, Mr. Anwar assigns to Mr. Abdelghany 50% of his rights, and Mr. Abdelghany agrees to assume 50% of Mr. Anwar's obligations, under the lease for the premises, all utility bills and other miscellaneous business expenses. The agreement concludes:

> This Agreement contains the final and entire Agreement between the parties herein and none of the parties shall be bound by any terms, conditions, statements or representations, oral or written not herein contained. It is further recognized that the parties hereto may amend the terms and conditions contained in this Agreement only by written amendment specifically referencing this Agreement in the provisions to be amended.

The agreement was signed on April 3, 2004, and Mr. Abdelghany gave Mr. Anwar a cashier's check for $28,000.00 that same day. Mr. Abdelghany testified that at Mr. Anwar's request, he paid an additional $1,000.00 in cash a week later. Mr. Abdelghany further testified that he spent between $3,500.00 and $4,000.00 purchasing materials to renovate the restaurant. The operating hours of the Islamabad Restaurant were from 11:00 a.m. to 11:00 p.m. on weekdays, and to 2:00 a.m. on weekends. Because Mr. Abdelghany kept his job at the newspaper, he did not come into the restaurant on weekdays until approximately 5:30 in the evening, although he continued to eat lunch there from time to time. Mr. Anwar made the food purchases and came in at least briefly during the early part of the day but was not present during the evening hours. On weekdays, the person in charge when neither Mr.

Anwar nor Mr. Abdelghany was present was the cashier, Mohammad Liaqat, who also made the daily bank deposits.

At the time the sale agreement was signed, the restaurant maintained its checking account at Industrial Bank. Only Mr. Anwar was a signatory on that account. Mr. Abdelghany insisted that a new account on which they were both signatories be opened at another bank, BB&T. Mr. Anwar testified that the BB&T account was opened one month after the agreement was signed and the money was put into that account. However, bank statements obtained by Mr. Abdelghany reflect that checks—all of them signed by Mr. Anwar—were written on the Industrial Bank account as late as June 30, 2004. These included payroll checks to Mr. Anwar's wife, Sakhtar Shanaz, his daughter, Tamsila Kanwal, and his cousin, Safdar Iqbal, in the aggregate amount of $1,468 a week, even though Mr. Abdelghany testified that he never saw any of them working at the restaurant. Mr. Anwar and Mr. Liaqat both testified that Ms. Shanaz and Ms. Kanwal worked at the restaurant during the day, performing such duties as wiping tables, washing dishes, and helping with the cooking. However, in response to a discovery interrogatory asking for the names and working hours of all the individuals who worked for the restaurant in 2004, Mr. Anwar did not list his wife, daughter, or cousin.

At the end of the first month, Mr. Abdelghany asked Mr. Anwar about splitting the profits but was told there had been no profits that month. The same thing happened the following month. Indeed, Mr. Abdelghany never received *any* money from the business. At the beginning of June 2004, Mr. Abdelghany opened a letter that had been sent by the landlord, stating:

5

> We are considerably disturbed by your failure to keep your
> lease agreement and pay Your [*sic*] rent, water charges, taxes on
> time.  The promises [*sic*] in a bad situation, sanitation, pluming
> [*sic*] rodent A/C all health hazard kept out of service.  This
> matter is so serious that we want you to surrender the premises
> by July tenth, 2004. . . . We also ask you to make arrangement
> to pay your outstanding balance.

Mr. Abdelghany testified that upon receiving the letter, he called Mr. Anwar, who seemed surprised.  Mr. Anwar came right in and told Mr. Abdelghany that he would deal with the landlord.  Mr. Abdelghany was not aware of any further communications from the landlord.  In July 2004 Mr. Abdelghany requested his money back from Mr. Anwar, but Mr. Anwar refused.  Mr. Abdelghany stopped working at the restaurant at the end of August and brought suit against Mr. Anwar in state court.  The restaurant continued to operate for a time but closed its doors in December 2004.

Discussion

A properly filed proof of claim is prima facie evidence of the amount and validity of the claim. Fed. R. Bankr. P. 3002(f).  For that reason, the party objecting to the claim has the initial burden of presenting sufficient evidence to overcome the prima facie validity. *In re C-4 Media Cable South, L.P.,* 150 B.R. 374, 377 (Bankr. E.D. Va. 1992).  Once the objecting party has done so, the ultimate burden of proof is on the creditor to establish the merits of the claim.[1] *Id.*  Mr. Abelghany's claim proceeds on two theories.  The first is that he was

---

[1] The only exception—not applicable here—is if non-bankruptcy law would place the burden of proof on the objecting party, such as in disputes over tax claims. *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct 1951, 147 L.Ed.2d 13 (2000) (burden of production and persuasion on trustee's objection to tax claim is the same in bankruptcy as it would be outside of
(continued...)

fraudulently induced to part with over $30,000 based on false representations by Mr. Anwar that the restaurant was generating $4,000 per month in profits and that he was on good terms with the landlord. The second is that Mr. Anwar breached the contract by not sharing the profits 50-50 as provided for in the agreement. Mr. Anwar has put on sufficient evidence to overcome the prima facie effect of the filed proof of claim. Accordingly, the issue before the court is whether Mr. Abdelghany has carried his burden of proof with respect to his claims.

I.

The court will first consider the claim of fraud in the inducement. Neither party has addressed the choice of law applicable to this claim. Although the Islamabad Restaurant is located in Washington, D.C.,[2] the sale agreement was negotiated and signed in Virginia. As it turns out, however, the elements Mr. Abdelghany must establish are the same whether Virginia or District of Columbia law applies. To establish fraud under Virginia law, a plaintiff must show by clear and convincing evidence (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the aggrieved party, and (6) resulting damages. *Bryant v. Peckinpaugh*, 241 Va. 172, 175, 400 S.E.2d 201, 203 (1991). In the District of Columbia, a plaintiff must prove by clear and

---

[1](...continued)
bankruptcy); *IRS v. Levy (In re Landbank Equity Corporation)*, 973 F.2d 265 (4th Cir. 1992) (debtor-taxpayer has burden of proof on disallowed deductions).

[2] Although no evidence was presented concerning where the company was incorporated, the court can take judicial notice that Islamabad Restaurant, Inc., was a corporation registered in the District of Columbia. *See* http://mblr.dc.gov/corp/lookup/index.asp.

convincing evidence (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken by the plaintiffs in reliance upon the representation, (6) which consequently resulted in provable damages. *Railan v. Katyal*, 766 A.2d 998, 1009 (D.C. 2001). As a practical matter, therefore, there is no difference between the applicable standards, and thus no real issue as to choice of law. In any event, because the parties have argued and relied on Virginia law throughout the proceedings, any objection to the application of Virginia law has been waived. *See, e.g., Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991).

       The more interesting question is whether the state-law evidentiary standard of clear and convincing evidence applies. The Supreme Court has said, "We presume that [the preponderance of the evidence] standard is applicable in civil actions between private litigants unless particularly important individual interests or rights are at stake." *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (holding that standard of proof on complaint to determine dischargeability of debt is preponderance of evidence). However, *Grogan* noted a possible exception to this general rule by stating, "At the outset, we distinguish between the standard of proof that a creditor must satisfy *in order to establish a valid claim against a bankrupt estate* and the standard that a creditor who has established a valid claim must still satisfy in order to avoid dischargeability. The validity of a creditor's claim is determined by *rules of state law*." *Id.* at 283 (emphasis added) (citing *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed 162 (1946)). In the present case, Mr. Abdelghany is seeking a determination that he has a valid claim against the bankruptcy estate. Moreover, federal courts in this circuit have uniformly

applied the clear and convincing standard to fraud claims brought under Virginia law in diversity cases. *Bank of Montreal v. Signet Bank*, 193 F.2d 818 (4th Cir. 1999); *Mayberry v. Ememssay*, 201 F. Supp. 2d 687 (W.D.Va. 2002); *Garrett v. Langley Federal Credit Union*, 121 F. Supp. 2d 887 (E.D. Va. 2000). Although the court recognizes the incongruity of holding Mr. Abdelghany to a greater standard of proof to establish a mere claim against the estate than if he had brought a complaint to except the debt from discharge on the grounds of fraud, such a result seems compelled by the weight of precedent. Accordingly, the court concludes that the state law evidentiary standard of clear and convincing evidence applies.

Mr. Abdelghany relies on two representations that he says were false and that he relied upon: that the restaurant was generating $4,000 a month in profits, and that Mr. Anwar had a good relationship with the landlord. Mr. Anwar denies telling Mr. Abdelghany that the restaurant was making any particular amount of money and avers that his relationship with the landlord had been good since 1995. With respect to the level of profits, if the standard of proof were merely preponderance of the evidence, the court would be inclined, however slightly, to credit the testimony of Mr. Abdelghany over Mr. Anwar's denials. However, the evidence is simply not sufficient to satisfy the clear and convincing standard. As for the relationship with the landlord, the fact that the landlord sent a letter of complaint two months *after* the agreement was reached does not clearly prove that the relationship was strained *prior* to that time. Indeed, since the landlord did not carry through on his demand that the business immediately vacate the premises, the court can only assume that Mr. Anwar was successful in mollifying him. Accordingly, the court cannot find that Mr. Abdelghany has carried his burden of proving fraud in the inducement.

9

II.

Mr. Abdelghany's alternate theory is breach of contract. Here, the standard of proof is preponderance of the evidence. The issue is whether Mr. Anwar breached the purchase agreement by not sharing the restaurant's profits equally with Mr. Abdelghany. The court finds that Mr. Abdelghany has carried his burden on this count, and that Mr. Anwar did indeed breach the agreement. Although Mr. Anwar states that there were no profits to split, the evidence is sufficient to show that Mr. Anwar, without Mr. Abdelghany's knowledge, was paying his wife, daughter and cousin $1,468 a week in "wages" from the revenues of the business even though they performed little if any work. Indeed, when asked in discovery to identify the employees of the business, Mr. Anwar did not list any of the three. Although in his trial testimony Mr. Anwar attempted to explain the omission, the court finds the explanation unconvincing. Regardless of what other things might have occupied Mr. Anwar's attention when he was responding to discovery, the *first* employee who ought to have come to mind—if she really were an employee—was his wife, followed by his daughter and cousin. The fact that he did not list them, coupled with Mr. Abdelghany's testimony that he never saw them at the restaurant, convinces the court that they were not real employees, and that Mr. Anwar breached the agreement to share the profits 50-50 by siphoning off whatever profits might otherwise have existed through purported wage payments to his wife, daughter and cousin.

There remains the issue of damages. The court concludes that the appropriate measure of Mr. Abdelghany's loss for the breach of contract is 50% of the amounts paid to the phantom employees for the period from April 3, 2004, when Mr. Abdelghany invested

his money through the end of August, when he left, or a period of approximately 21 weeks. The total amount of phantom wages paid during that period that would otherwise have been available to share as profits was $30,828. Mr. Abdelghany's 50% share of that amount comes to $15,414. Accordingly, the court will allow the claim in that amount and will disallow the balance of the claim.

A separate order will be entered consistent with this opinion.

Date: _____    _____
                                              Stephen S. Mitchell
Alexandria, Virginia                        United States Bankruptcy Judge

Copies to:

William E. Tabot, Esq
DeWilde & Tabot, P.C.
9248 Peabody St.
Manassas, VA 20110
Counsel for the debtor

Michael J. O. Sandler, Esq.
5501 Backlick Road, Suite 220
Springfield, VA 22151
Counsel for the creditor

H. Jason Gold, Esq.
Wiley, Rein & Fielding, LLP
7925 Jones Branch Drive
Suite 6200
McLean, VA 22102
Chapter 7 trustee